UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GLOBAL VERGE, INC., a Nevada corporation,<br><br>           Plaintiff,<br><br>   vs.<br><br>DERRICK L. RODGERS, an individual;<br>PEOPLE HELPING PEOPLE, INC.,<br><br>           Defendants. | Case No.: 2:10-cv-01360-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion to Dismiss–#7; Motion for<br>Temporary Restraining Order and<br>Preliminary Injunction–#8) |

Before the Court is Defendants Derrick L. Rodgers and People Helping People, Inc.'s **Motion to Dismiss** (#7), filed August 23, 2010.  The Court has also considered Plaintiff Global Verge, Inc.'s ("Global") Opposition (#15), filed September 17, 2010, and Defendants' Reply (#18), filed September 23, 2010.

Also before the Court is Global's **Motion for Temporary Restraining Order and Preliminary Injunction** (#8), filed August 27, 2010.  The Court has also considered Defendants' Opposition (#17), filed September 20, 2010, and Global's Reply (#19), filed September 30, 2010.

/

/

/

1

**BACKGROUND**

This case involves the alleged breach of a non-disclosure agreement entered into between Rodgers and Global. The following facts are either alleged by Global or are uncontradicted, unless otherwise noted. Global is an internet based business incorporated in Nevada with its principal place of business in Missouri. Rodgers is a North Carolina citizen. Global sells products at "wholesale" to people–independent business operators of some kind or e-associates–who can then sell these products at retail. Global hired Rodgers as a consultant and had him sign a Non-Disclosure / Non-Circumvent Agreement (the "NDA") on or about July 30, 2009. Rodgers negotiated this agreement in North Carolina, only dealt with people in Missouri, and only faxed documents to Missouri. Rodgers never dealt with anyone in Nevada or sent documents to Nevada. After Rodgers signed the agreement, Global provided Rodgers with certain confidential and proprietary information in his capacity as a consultant. Rodgers and Global terminated their relationship on or about November 16, 2009, not quite four months after Rodgers began consulting Global.

After Rodgers ceased working with Global, Defendant People Helping People ("PHP") hired him as its new CEO. PHP is a Delaware corporation with its principal place of business in North Carolina. Global believes that Rodgers disclosed Global's confidential information to PHP because PHP now uses the same or similar business model as Global and sells the same products to independent sales people or e-associates. PHP operates at least two websites (www.phpico.com and www.teamgg.com) that give information about the PHP, allow people to sign up to receive newsletters, and apply to become these independent type sales operators that both companies apparently use. Global claims that PHP has been able to replicate its business model because Rodgers disclosed confidential information to PHP after he began employment there.

Global filed this suit with the Eighth Judicial District Court for the State of Nevada on June 8, 2010, alleging (1) breach of contract, (2) breach of the duty of good faith and fair

dealing, (3) misappropriation, (4) conversion, (5) tortious interference with contractual relations, (6) tortious interference with prospective economic advantage, (7) civil conspiracy/concert of action, (8) unfair competition/unjust enrichment, and (9) injunctive relief.  Defendants removed the case to this Court on August 11.  For the reasons set forth below, the Court grants Defendants' motion and dismisses this case.

**DISCUSSION**

**I.      Personal Jurisdiction**

      **A.      Legal Standard**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "lack of jurisdiction over the person."  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  A court evaluating such a motion may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Where a court proceeds on the basis of affidavits and without discovery and an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss," that is, demonstrate facts that, if true, would support jurisdiction over the Defendant. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true, *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. " *Schwarzenegger*, 374 F.3d at 800.

/

/

3

### B.      Analysis

When there is no governing federal statute, a district court must apply the personal jurisdiction law of the state in which it sits. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). Since Nevada's long-arm statute is coextensive with the United States Constitution and its due process requirements, *Welburn v. Eighth Judicial Dist. Court*, 806 P.2d 1045, 1046 (Nev. 1991), the personal jurisdiction question is simply analyzed under federal due process standards. Further, there are two types of personal jurisdiction: general and specific. *Trump v. District Court*, 857 P.2d 740, 748 (Nev. 1993). The Court will address both types of jurisdiction as plaintiff argues that both apply. In this analysis, the Court determines that it does not have general or specific jurisdiction over either of the defendants.

#### 1.      General Jurisdiction

The exercise of general jurisdiction is appropriate when a defendant's activities in the forum are so "substantial" or "continuous and systematic," *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that it "approximates physical presence" in the forum state, *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Some of the factors that a court may consider in making this determination are "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.* Rare or insubstantial contact or business with the forum, therefore, is insufficient for general jurisdiction.

##### i.      Derrick Rodgers

General jurisdiction is inappropriate against Rodgers. Here, Rodgers has never entered Nevada and there is no allegation that he has directly done business in or with Nevada. The only factual allegations are that Rodgers entered into a contract with a Nevada corporation, that he misappropriated data from the Nevada corporation, and that as CEO of a different

/

/

1  corporation he solicited four, and maybe more, Nevada citizens[1] to become e-associates or
2  independent business operators for PHP.  Global asserts various torts related to these alleged acts,
3  but they do not create substantial or continuous and systematic contact with Nevada.  Therefore,
4  they are insufficient for general jurisdiction.

5  Applied here, Rodgers never purposefully availed himself of the benefits and
6  privileges of Nevada law and did not engage in substantial, continuous, or systematic contact with
7  Nevada.  Beyond never physically entering Nevada, Rodgers never communicated with anyone
8  physically present in Nevada in negotiating his contract with Global.  In negotiating the contract,
9  Rodgers communicated with and faxed documents back and forth with people in Missouri, not
10 Nevada.  Further, the contract itself states that it is to be governed by Massachusetts rather than
11 Nevada law.  (Dkt. #7, Mot. Ex. A at § 11(a).)  Therefore, at no point did Rodgers avail himself of
12 Nevada, much less in a continuous or systematic way.  Finally, the contract was executed in North
13 Carolina and no work was done or required to be done in Nevada.  To determine that merely
14 entering a contract with a foreign entity in one's home states submits that person to jurisdiction in
15 the state where that entity may be incorporated is nonsensical and does not take into account the
16 practicalities of commerce.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).  For
17 example, opening a bank account in Nevada cannot create general personal jurisdiction in
18 Delaware just because the bank happens to be incorporated there, that is simply not substantial or
19 continuous and systematic contact with the forum.  *See Helicopteros*, 466 U.S. at 416.

20 Global also argues that since Rodgers worked for Global for four months "he was
21 able to market to and engage in business with Nevada residents."  This is also insufficient to create
22 general jurisdiction.  While Rodgers' employment as an e-associate (though not as a consultant) is
23 disputed, it is immaterial.  Global does not allege that Rodgers did business with Nevada as an e-

---

[1] PHP presents evidence that two of these four are actually residents of other states and that a third never actually joined or enrolled with PHP.  However, the fourth was a Nevada member of PHP at the time Global commenced this lawsuit even though he has since disassociated from PHP.

1  associate, only that he could have.  With modern technology any person can engage in business
2  with people in nearly any forum at any time.  The mere opportunity to engage in conduct that may
3  create general jurisdiction is not the same as actually engaging in that conduct.  Therefore this
4  allegation does not create general jurisdiction either.
5         Finally, the assertion of general personal jurisdiction must be reasonable.  *Amoco*
6  *Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 852–53 (9th Cir. 1993).  Courts will
7  generally consider seven various factors that the Court need not lay out here.  *See id.*  The burden
8  of showing that jurisdiction is unreasonable is on the defendant.  *Gator.com Corp. v. L.L. Bean,*
9  *Inc.*, 341 F.3d 1072, 1081 (9th Cir. 2003).  Here, jurisdiction over Rodgers is unreasonable.  To
10 extend general jurisdiction against a person whose only contact with a forum is employment by a
11 company incorporated in the forum and an employment related contract with that same company
12 goes beyond reason.  Because employers are frequently incorporated far from where people work,
13 this would extend general jurisdiction beyond its rational bounds and could force employees to
14 litigate in areas of the country with which they have no real, substantive relationship and give an
15 overwhelming advantage to employers.  For the foregoing reasons, the Court does not have general
16 jurisdiction over Rodgers.
17        **ii.    People Helping People, Inc.**
18        The Ninth Circuit has adopted a sliding scale approach based on *Zippo Mfg. Co. v.*
19 *Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997), in analyzing general jurisdiction as
20 regards internet based parties.  *Gator.com*, 341 F.3d at 1079.  This sliding scale test requires that
21 the defendant clearly engages in business over the internet and that the defendant's business
22 contacts with the forum be substantial or continuous and systematic.  *Id*.  The Ninth Circuit
23 recognizes that digital storefronts are functionally equivalent to physical stores, at least for
24 jurisdictional purposes, and therefore does not require physical presence in the state.  *Id.*
25 Nonetheless, the "nature of the commercial activity" must be substantial enough to "'approximate
26 physical presence.'"  *Id.* (quoting *Bancroft & Masters*, 223 F.3d at 1086).

AO 72
(Rev. 8/82)

1    Applying this sliding scale test, the Court does not have general jurisdiction over
2 PHP.  While PHP clearly has an internet presence, it is far less clear whether it clearly does
3 business over the internet.  This is not L.L. Bean, Amazon.com, Newegg.com, or another internet
4 retailer that clearly does business over the internet.  *See Gator.com*, 341 F.3d at 1080.  Nor is it a
5 financial entity engaging in non-retail commerce on the internet.  *See Gorman v. Ameritrade*
6 *Holding Corp.*, 293 F.3d 506, 512–13 (D.C. Cir. 2002).  Instead, PHP provides informational
7 websites where people can sign-up or apply to become some sort of independent salesperson who
8 purchases products from PHP and then sells them on their own.  Apparently, no one can buy
9 anything directly from PHP's websites, all they can do is submit personal information to PHP in
10 the application process and learn about the company.  While these are interactive websites, without
11 something more, they are insufficient to confer general jurisdiction over PHP.  *See Revell v. Lidov*
12 317 F.3d 467, 470–71 (5th Cir. 2002) (holding that the court did not have general jurisdiction over
13 a defendant whose website allowed users to subscribe to a journalism review, purchase
14 advertising, and submit electronic admissions applications because the cited contacts with the
15 forum were not substantial).  Here, where Global can only show the website and one actual PHP
16 connected Nevada resident, the contacts are simply not substantial and are, therefore, insufficient
17 to confer general jurisdiction over the company.

18    **2.    Specific Jurisdiction**

19    The Ninth Circuit analyzes specific jurisdiction using a three-prong test to
20 determine whether a forum has specific jurisdiction over a particular defendant.  *Schwarzenegger*,
21 374 F.3d at 802.  The three prongs are:

22    (1)  The non-resident defendant must purposefully direct his activities or
consummate some transaction with the forum or resident thereof; or perform
23    some act by which he purposefully avails himself of the privilege of conducting
activities in the forum, thereby invoking the benefits and protections of its
24    laws;
(2)  the claim must be one which arises out of or relates to the defendant's
25    forum-related activities; and
(3)  the exercise of jurisdiction must comport with fair play and substantial
26    justice, i.e. it must be reasonable.

7

1  *Id*.  For specific jurisdiction over a defendant, a plaintiff must establish the first two prongs, and if
2  he does, the burden shifts to the defendant to show that the third prong is not met.
3  *Schwarzenegger*, 374 F.3d at 802.  Here, the Defendants did not direct their actions at or avail
4  themselves of Nevada, the claims are not sufficiently related to forum activity, and, importantly,
5  the exercise of jurisdiction would not "comport with fair play and substantial justice" and would
6  not be reasonable.  *Id.*

### i. Derrick Rodgers

Global asserts both contract and tort claims against Rodgers.  Therefore, in addressing the first prong of the test, the Court must address whether Rodgers either purposefully availed himself of Nevada or purposefully directed his activities at Nevada.  This is because the purposeful availment analysis applies to contract claims and purposeful direction applies to tort claims.  *See Schwarzenegger*, 374 F.3d at 802.  Purposeful availment may be shown by conduct "such as executing or performing a contract" in the forum.  *Id.*  A showing of purposeful direction, on the other hand, consists of evidence that the "defendant's actions outside the forum state [were] directed at the forum."  *Id*.

### a. Purposeful Availment

As the Court explained above, Rodgers has not purposefully availed himself of Nevada.  Global argues that Nevada has jurisdiction over Rodgers because of the contract Rodgers executed with it and because Rodgers worked for it.  The Court disagrees; neither confers jurisdiction.  As shown above, Rodgers did not execute the contract in Nevada, negotiate the contract in Nevada, or perform the contract in Nevada.  He never worked in Nevada and his work did not even involve Nevada.  Further, the contract states that it is to be governed by Massachusetts law and so Rodgers does not even avail himself of Nevada law in the interpretation of the contract.  Finally, Global argues that PHP's business in Nevada confers jurisdiction over Rodgers.  This is inaccurate.  PHP's conduct is insufficient to create jurisdiction over Rodgers

/

8

because the two are different entities.  Therefore, Rodgers has not purposefully availed himself of Nevada and the first prong of the test fails with regard to the contract claims.

### b.      Purposeful Direction

Rodgers has not purposefully directed his activities at Nevada.  Purposeful direction is analyzed under the three-part *Calder* effects test.  *Schwarzenegger*, 374 F.3d at 804 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).  *Calder* "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food*, 303 F.3d at 1111).  Global argues that since it is incorporated in Nevada, the affect of any tort against it is felt in Nevada and that Rodgers (and PHP) should reasonably know this.  However, Global does not support its argument that mere incorporation makes the effect of any tort felt in (or aimed at) the company's state of incorporation with any legal citations.

The express aiming requirement is not met merely because the plaintiff is incorporated in the forum state, more is required.  *See Bancroft & Masters*, 223 F.3d at 1087; *see also Schwarzenegger*, 374 F.3d at 807 (determining that the fact that defendant may have known that plaintiff lived in the forum was insufficient to show express aiming at the forum).  The Ninth Circuit has determined "that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Dole Food*, 303 F.3d at 1113.  Other cases from other circuits also refer to a corporation's principle place of business, not its state of incorporation, in determining where harm occurred. *See, e.g.*, *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388–89 (8th Cir. 1991) (The plaintiff corporation "has its principal place of business in the forum state and thus suffered the economic injury there.").  While these cases are generally discussing this issue in reference to choice of law analysis, the reasoning holds here as well.

Personal jurisdiction by way of express aiming does not logically extend from a corporation's principle place of business, where it actually is, to its state of incorporation, where

9

its foundational papers are. Corporations generally incorporate in a particular state either because they are located in the state or for internal governance and legal matters. However, by incorporating in a particular forum a corporation may be sued there regardless of whether they do anything else there. Corporations do this because they believe that certain states internal governance laws can afford great protection and be very valuable to the corporation. However, it does not follow that by this strategy the corporation gains the right to sue anybody else in that same forum regardless of where the bad acts took place. Here, where there is no evidence that the bad acts actually took place in Nevada, were in any way aimed or directed at Nevada, or that the Defendants knew the effect of which would occur in Nevada, the *Calder* test and the purposeful direction prong are not met.

### c. Remaining Prongs

Since the Court has determined that Rodgers neither purposefully availed himself nor purposefully directed his actions at the forum, the Court need not address the other two prongs. Nonetheless, the Court will address them succinctly. First, the Court has already determined that Rodgers did not engage in activities sufficiently related to this forum for them to count in the Court's analysis and therefore the claims cannot relate to forum related activity. Finally, any exercise of jurisdiction based on the facts alleged by Global would be unreasonable and violate the Court's sense of fair play and substantial justice. The connection to the forum is simply too tenuous for the Court to assert jurisdiction. Therefore, even if the first two prongs were met, the Court would not have specific jurisdiction over Rodgers. Because Global does not satisfy the requirements for either general or specific personal jurisdiction, the Court grants the motion to dismiss as regards Rodgers.

### ii. People Helping People, Inc.

While Global asserts both contract and tort claims against Rodgers, Global does not allege the contractual claims against PHP. The Court, therefore, need only address purposeful direction in analyzing the first prong of the three-prong specific jurisdiction test detailed above.

### a. Purposeful Direction

Under the *Calder* effects test used above, PHP's conduct does not meet the purposeful direction requirement. Global makes the same arguments against PHP as it did against Rodgers and therefore the same analysis applies. Again, Global does not support its argument that mere incorporation makes the effect of PHP's actions felt in or aimed at Nevada. Therefore the *Calder* test and the purposeful direction prong fail.

### b. Forum Related Activities

Global does allege some PHP forum related activities. Principally, Global alleges that PHP has hired away at least four of Global's Nevada e-associates. However, PHP sufficiently rebuts these unsupported allegations as to three of the e-associates. While the Court is not certain that "hire" or even "employ" would be the correct terms to use in the type of arrangements both of these companies use, the Court determines that it is immaterial. Even if this minor forum related activity is related to the conduct of which Global complains of, the other two prongs are not met and therefor the Court will not address this prong further.

### c. Fair Play and Substantial Justice

As above, applied to Rodgers, PHP's connections to the forum are too tenuous to support specific personal jurisdiction even if all of Global's factual allegations are true. Any bad conduct appears to have occurred in North Carolina, where Rodgers and PHP are both located, and any such conduct was aimed at and felt in Missouri, where Global has its principal place of business. The connections to Nevada (Global's incorporation, one known e-associate, and theoretical e-associate poaching) are too tenuous to support specific jurisdiction. Because the Court does not have either general or specific jurisdiction over PHP, the Court must grant the motion to dismiss PHP.

### 3. Jurisdictional Discovery

The Court denies Global's request for jurisdictional discovery. Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of

AO 72
(Rev. 8/82)

1  jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."
2  *Boschetto* v. *Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008).  The party seeking discovery bears the
3  burden of showing that the denial of discovery results in actual and substantial prejudice to it.  *Id*.
4  Here, Global cannot demonstrate actual or substantial prejudice because it still has viable forums
5  available to it that would not be prejudicial (namely, Missouri, its principal place of business) and
6  that would be required to apply the same law as this Court would apply.  Further, only one
7  possible witness is in Nevada, the others all appear to be in Missouri or North Carolina.  Since
8  Global cannot demonstrate actual and substantial prejudice, the Court denies its request for
9  jurisdictional discovery.

**II.  Temporary Restraining Order and Preliminary Injunction**

The Court cannot issue a temporary restraining order or a preliminary injunction against parties over which it does not have personal jurisdiction.  Since the Court previously established that it does not have jurisdiction over the defendants to this case and therefore must dismiss this case in its entirety, the Motion for Temporary Restraining Order and Preliminary Injunction is denied as moot.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#7) is GRANTED.

IT IS FURTHER ORDERED that Global's Motion for Temporary Restraining Order and Preliminary Injunction (#8) is DENIED as moot.

The Clerk of the Court is directed to close this case.

Dated: January 7, 2011.

_____
ROGER L. HUNT
Chief United States District Judge